**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| NAEIM TOUMA,<br><br>Petitioner,<br><br>v.<br><br>WARDEN OF THE ADELANTO ICE PROCESSING CENTER et al.,<br><br>Respondents. | Case No. 5:26-cv-05740-DFM<br><br>ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS |

## I. INTRODUCTION

In 2023, Petitioner Naeim Touma ("Petitioner") entered the United States, was ordered removed in expedited removal proceedings, and was released from immigration custody on an Order of Supervision ("OSUP"). Petitioner lived in the United States for the next three years, during which time he obtained Temporary Protected Status ("TPS") and lawful employment authorization. On September 1, 2026, Petitioner was re-detained on the stated ground that circumstances had changed such that there is a significant likelihood of his removal in the reasonably foreseeable future.

Petitioner filed a petition for writ of habeas corpus under 28 U.S.C. § 2241. See Dkt. 1 ("Petition"). Respondents answered. See Dkt. 9 ("Answer"). Petitioner did not reply. This Court held a hearing on October 16,

2026. See Dkt. 11. At the Court's direction, the parties filed supplemental briefs. See Dkts. 12 ("Resp. Supp. Br."), 13 ("Pet. Supp. Br.").

For the reasons set forth below, the Petition is **GRANTED** in part.

## II. BACKGROUND

Petitioner is a Syrian national and a practicing Christian. See Petition ¶ 14. Petitioner alleges that he fled Syria because he fears religious persecution. See id. ¶ 20. On or about May 21, 2023, Petitioner entered the United States at the southern border. See id. ¶ 21. Petitioner was detained upon entry and issued a Notice and Order of Expedited Removal. See id.; Dkt. 12-2.[1] Petitioner received a negative credible fear determination from an asylum officer, which an Immigration Judge ("IJ") affirmed on June 22, 2023. See Petition ¶¶ 21-22; Dkt. 9-1 at 5-6. Petitioner was not removed. On or about July 26, 2023, Petitioner was released on an OSUP. See Dkt. 9-1 at 1; Pet. Supp. Br. at 10. Over the next three years, Petitioner complied with the conditions of his release, appeared for check-ins, and obtained and maintained lawful employment authorization. See Pet. Supp. Br. at 11; Petition ¶¶ 1, 24-25.

On May 3, 2024, Petitioner applied for TPS; United States Citizenship and Immigration Services ("USCIS") granted his application. See Petition ¶ 25. On May 17, 2024, Petitioner filed an affirmative application for asylum. See id. ¶ 26. On November 12, 2025, USCIS dismissed Petitioner's application on the ground that Petitioner was subject to a previously issued expedited removal order. See id.; Dkt. 1-1 at 6-7.

---

[1] Petitioner's May 21, 2023 Notice and Order of Expedited Removal appears partially unsigned. See Dkt. 12-2 at 3. In the Petition, Petitioner does not contest that he is subject to an administratively final expedited removal order. See Petition ¶ 34.

Meanwhile in Syria, a coalition of armed groups overthrew the Assad regime in December 2024. See Petition ¶ 27.

On September 22, 2025, the Department of Homeland Security ("DHS") published notice terminating Syria's TPS designation. See id. ¶ 30. The termination ultimately took effect on July 27, 2026. See id.

On July 20, 2026, Petitioner, through counsel, filed a motion to reopen his 2023 credible fear determination based on materially changed country conditions in Syria. See id. ¶ 31; Dkt. 12-1, Declaration of Dade Gomez ("Gomez Decl.") ¶ 8. Three days later, an IJ denied the motion without an evidentiary hearing on jurisdictional grounds. See Dkt. 1-1 at 3-4; Pet. Supp. Br. at 11. Both parties reserved appeal. See Dkt. 1-1 at 4.[2]

On September 1, 2026, U.S. Immigration and Customs Enforcement ("ICE") revoked Petitioner's OSUP and re-detained him at a scheduled check-in. See Petition ¶¶ 2, 32, 54; Gomez Decl. ¶ 10; Pet. Supp. Br. at 11. Petitioner alleges that he was given no advance notice, no written notification of the reasons for the revocation, and no opportunity to respond. See Petition ¶ 32. With their answer, Respondents filed the following documents, each dated September 1, 2026: Notice of Revocation of Release; Alien Informal Interview Upon Revocation of Order of Supervision; and Notice and Order of Expedited Removal. See Dkt. 9-1 at 1-4. Petitioner remains detained at the Adelanto ICE Processing Center. See https://locator.ice.gov/odls/#/search (search A-Number: "246-923-243," Country of Birth: "Syria") (last accessed November 3, 2026).

Petitioner challenges his re-detention on the following grounds: (1) detention in violation of 8 U.S.C. § 1231(a)(6), as construed by the Supreme

---

[2] At the October 16, 2026 hearing, Petitioner's counsel stated that he did not appeal this order.

Court; (2) detention in violation of 8 C.F.R. §§ 241.4, 241.13; (3) deprivation of liberty in violation of the procedural component of the Fifth Amendment's Due Process Clause; and (4) deprivation of liberty in violation of the substantive component of the Due Process Clause. See Petition ¶¶ 39-50. Petitioner also challenges the execution of his removal order without a current fear assessment. See id. ¶¶ 51-57. Petitioner seeks release under his previously applicable conditions or, alternatively, a custody redetermination hearing; an order requiring Respondents to provide him with a new credible fear interview and determination; a stay of his removal until Respondents provide him with a new credible fear determination; declaratory relief; injunctive relief regarding his re-detention; and fees. See id. at 17-19.

Respondents argue that Petitioner is detained for the legitimate purpose of lawfully executing his final order of removal; that he is within the removal period or the presumptively reasonable detention period; and that he cannot show that there is no significant likelihood of removal in the reasonably foreseeable future. See Answer at 2-4; Gomez Decl. ¶ 16 ("[Petitioner] currently remains and will continue to remain in ICE's mandatory custody pursuant to INA § 241(a)(1)(A) as an alien subject to a final order of removal."). Respondents also argue that "Petitioner was not enrolled in a supervised release program" and was issued a Notice of Revocation and Release and provided with an informal interview upon his detention. See Answer at 4-6. Respondents argue that whatever procedural deficiencies supposedly occurred do not warrant release. See id. at 7.

## III. DISCUSSION

The Court has jurisdiction under 28 U.S.C. § 2241 to consider Petitioner's challenge to the lawfulness of his custody. To succeed on a habeas petition, a petitioner must show that he or she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

"The writ of habeas corpus historically provides a remedy to non-citizens challenging executive detention." Trinidad y Garcia v. Thomas, 683 F.3d 952, 956 (9th Cir. 2012) (en banc).

## A. Legal Framework

A noncitizen ordered removed must be removed "from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). Detention is mandatory during this ninety-day "removal period." Id. § 1231(a)(2)(A). If removal is not effectuated during the removal period, "the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." Id. § 1231(a)(3). Certain categories of noncitizens may be detained beyond the removal period, as delineated in § 1231(a)(6), so long as their detention comports with principles of due process. See Zadvydas v. Davis, 533 U.S. 678, 689, 701 (2001) (holding that due process requires reading in an "implicit limitation" on the duration of detention under § 1231(a)(6) and adopting a "presumptively reasonable period of detention" of up to six months).

Once a noncitizen is released under § 1231(a)(3), their release may be revoked in accordance with federal regulations. First, an individual subject to an OSUP "who violates any of the conditions of release may be returned to custody." 8 C.F.R. §§ 241.13(i)(1), 241.4(l)(1). Second, the government may "revoke an alien's release . . . and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." Id. § 241.13(i)(2). Third, certain officials may exercise their discretion to revoke release where (i) the purposes of release have been served; (ii) the noncitizen violates a condition of release; (iii) it is appropriate to enforce a removal order or commence removal proceedings; or (iv) the noncitizen's conduct or any other circumstances indicates that release would no longer be appropriate. See id. § 241.4(l)(2).

When revoking an OSUP, ICE must notify the noncitizen "of the reasons for revocation of his or her release" and "conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." Id. §§ 241.13(i)(3), 241.4(l). If the noncitizen is not released after the informal interview, their continued detention will be subject to a review process "which will ordinarily be expected to occur within approximately three months after release is revoked," followed thereafter by periodic reviews as necessary. Id. § 241.4(l)(3).

## B. The Record Indicates That Petitioner Is Detained Under § 1231(a)(6)

Although the record includes a Notice and Order of Expedited Removal dated September 1, 2026, see Dkt. 9-1 at 4,[3] the parties do not appear to dispute that the 2023 expedited removal order is the operative, administratively final removal order. See Petition ¶ 34; Dkt. 1-1 at 6; Gomez Decl. ¶ 7; Pet. Supp. Br. at 9. As Petitioner highlights, Respondents have not argued that the termination of Syria's TPS designation started a new removal period. See Pet. Supp. Br. at 16-17.

The Court agrees with Petitioner that his ninety-day removal period started in 2023 and thus expired years ago. See 8 U.S.C. § 1231(a)(1). The Court also agrees with Petitioner that the government's decision to release him on an OSUP did not stop the ninety-day clock.[4] Accordingly, the Court turns to Petitioner's claims regarding the revocation of his OSUP.

---

[3] The Court inquired about the September 1, 2026 removal order at the October 16, 2026 hearing. Counsel did not explain why ICE issued this order.

[4] It is unclear why DHS released Petitioner on an OSUP. See 8 U.S.C. § 1231(a)(2)(A) (mandating detention during the removal period); and see 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). Nonetheless, it is undisputed that Petitioner was released on an OSUP on July 26, 2023; both counsel confirmed this at the

### C. ICE Improperly Revoked Petitioner's OSUP

Petitioner alleges that ICE violated the applicable regulations when it revoked his OSUP and re-detained him. See Petition ¶¶ 42-48. The Court agrees. The September 1, 2026 Notice of Revocation indicates that Petitioner's OSUP was being revoked per 8 C.F.R. § 241.4(l). See Dkt. 9-1 at 1. As discussed at the October 16, 2026 hearing, this appears erroneous: none of the § 241.4(l) sub-boxes are checked. See id. Under the § 241.13(i) box, the Notice indicates: "[c]ircumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future." Id. Though none of the § 241.13(i) sub-boxes are checked, the blank space for "Country of Removal" states: "Third Country Removal." See id. at 2. Respondents subsequently confirmed that Petitioner will be removed to Syria. See Resp. Supp. Br. at 2. Petitioner's counsel highlights additional issues with the Notice, including conflicting timestamps and the box left unchecked regarding service on counsel of record. See Pet. Supp. Br. at 13, 25-26.

The Court concludes that the Notice did not sufficiently notify Petitioner "of the reasons for revocation of his or her release" as required by the regulations. The generic notice provided to Petitioner was deficient and did not provide concrete information regarding the revocation to which Petitioner could meaningfully respond. See, e.g. Zhanuzakov v. Warden, Desert View Annex, No. 26-04199, 2026 WL 2351228, at *3 (C.D. Cal. Aug. 13, 2026) ("Notice must provide real, specific, concrete information that a noncitizen could actually respond to."); Hashemi v. Noem, 809 F. Supp. 3d 1027, 1034-35 (C.D. Cal. 2025) ("This Notice contains no factual allegations specific to

---

October 16, 2026 hearing. "The Court's role is to look at what DHS did, not what they could, would or should have done." Sherpa v. Almodovar, No. 25-01718, 2026 WL 1865373, at *4 (W.D. La. June 29, 2026).

Petitioner, even though there are purportedly concrete reasons for revocation that ICE could have laid out. Petitioner must be told what circumstances had changed in order to meaningfully respond to the reasons and submit evidence in opposition, as allowed under sections 241.4(l)(i) and 241.13(i)(3). This Notice does not do that and thus does not comply with the regulations. This Court is not requiring that a notice of revocation include any particular magic words; but it must provide real, specific, concrete information that a noncitizen could actually respond to." (simplified)); Abuelhawa v. Noem, 811 F. Supp. 3d 847, 861 (S.D. Tex. Oct. 16, 2026) ("[T]he Government fails to meet its burden where it provides only conclusory statements as to the likelihood of removal."). The September 1, 2026 Notice merely restates the regulatory phrase regarding changed circumstances; it contains nothing specific to Petitioner's circumstances.

"Numerous courts have found that when ICE revokes the release of a noncitizen who has been ordered removed to effectuate that noncitizen's removal, 'it is [ICE's] burden to show a significant likelihood that the alien may be removed.'" Phouvieng K. v. Andrews, No. 25-01512, 2025 WL 3265504, at *4 (E.D. Cal. Nov. 24, 2025) (collecting cases); see also Balouch v. Bondi, No. 25-0216, 2025 WL 2871914, at *2 (E.D. Tex. Oct. 9, 2025) ("Imposing the burden of proof on the alien each time he is re-detained would lead to an unjust result and serious due process implications.").

Respondents have not explained what has changed about Syria's willingness to accept Petitioner or any reasons for their belief regarding the same. To the extent Respondents point to the termination of Syria's TPS designation as a changed circumstance, this governmental act removed a legal bar to removal but says nothing about whether the Syrian government will issue a travel document to Petitioner. See Pet. Supp. Br. at 21. Moreover, Respondents' travel document request was not made until September 9, 2026,

over a week after ICE revoked Petitioner's OSUP and re-detained him. See Gomez Decl. ¶¶ 10, 13.[5] Respondents have not provided an estimate of when they think a travel document will issue or why they believe Petitioner's removal is reasonably foreseeable. Respondents state only that the request remained pending as of October 23, 2026. See id. ¶ 14. The possibility of removal does not equate to a significant likelihood of removal in the reasonably foreseeable future. See Balouch, 2025 WL 2871914, at *3; see also Nguyen v. Scott, 796 F. Supp. 3d 703, 725 (W.D. Wash. 2025) ("Courts in this circuit have regularly refused to find Respondents' [Zadvydas] burden met where Respondents have offered little more than generalizations regarding the likelihood that removal will occur." (citations omitted)).

Additionally, there is no evidence that Petitioner was afforded a meaningful informal interview. Although the government has submitted a document titled "Alien Informal Interview," that document reflects that Petitioner did not want to make a statement and did not provide any documents. Dkt. 9-1 at 3. This is unsurprising given Petitioner's lack of advance notice of the impending OSUP revocation and lack of counsel at the interview. See Pet. Supp. Br. at 25-26. Moreover, as stated, because Petitioner was not given the reasons for the revocation of his OSUP, he could not have meaningfully responded to them. See Hashemi, 809 F. Supp. 3d at 1035.

---

[5] Respondents state that Petitioner refused to sign or fill out a travel application or answer any biographical questions during an attempted September 4, 2026 travel interview. See Gomez Decl. ¶ 12. Petitioner explains that he was without counsel and did not understand what he was being asked to sign or where ICE proposed to send him. See Pet. Supp. Br. at 17. The record indicates that Petitioner signed the travel document request five days later, and the request was submitted that same day. See id.; Gomez Decl. ¶ 13. Petitioner persuasively argues that his September 4 conduct cannot supply a reason that was absent from the September 1 Notice. See Pet. Supp. Br. at 19.

In sum, Petitioner sufficiently established that ICE failed to follow its own regulations, specifically 8 C.F.R. §§ 241.4 and 241.13, regarding the September 1, 2026 revocation of his OSUP and his re-detention. See, e.g., Esmail v. Noem, No. 25-8325, 2025 WL 3030590, at *5-7 (C.D. Cal. Sept. 12, 2025) (granting TRO); Hashemi, 809 F. Supp. 3d at 1034-37 ("These procedures are not optional or discretionary; they must be followed, and failure to do so renders the detention unlawful. Rules matter. Hearings matter." (internal quotation marks and citation omitted)).

**D. Petitioner Is Entitled to Release**

A growing number of courts have found that the government's failure to follow its release revocation procedures renders the re-detention unlawful and requires release. See, e.g. Zhanuzakov, 2026 WL 2351228, at *4; Hashemi, 809 F. Supp. 3d at 1036-37. The Court similarly concludes that Petitioner's release on his previously applicable conditions is necessary to return to the status quo. See Zhanuzakov, 2026 WL 2351228, at *5 (collecting cases).

However, the Court's order is limited to the violation that has occurred. That question of whether, or under what circumstances, Respondents may lawfully seek to re-detain Petitioner in the future is not squarely presented on this record and would depend on facts and circumstances not currently before the Court, including any changed circumstances and the procedures employed. The Court addresses only Petitioner's current detention, which began on September 1, 2026. Accordingly, the Court declines to enter the permanent, prospective injunctive relief requested by Petitioner.

**E. Challenges to Removal**

Section 1252(g) strips jurisdiction over claims "arising from the decision or action by the Attorney General to . . . execute removal orders." 8 U.S.C. § 1252(g). It does not bar a detention challenge, but it bars a claim to enjoin execution of a removal order. See Rauda v. Jennings, 55 F.4th 773, 777-78 (9th

Cir. 2022); Reno v. Am.-Arab Anti Discrimination Comm., 525 U.S. 471, 482 (1999) (narrowly construing § 1252(g) to reach three discrete actions: the Attorney General's "decision or action" to "commence proceedings, adjudicate cases, or execute removal orders"). Petitioner's requests regarding his credible fear proceedings and removal to Syria per his administratively final order of removal fall within that bar. Petitioner's arguments regarding the changed conditions in Syria appear more appropriately directed to another tribunal.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that the Petition is **GRANTED IN PART.** Respondents shall immediately release Petitioner Naeim Touma (A-Number: "246-923-243") from custody subject to the conditions in effect prior to his September 1, 2026 re-detention. Respondents shall file a Notice of Release within three (3) court days confirming Petitioner's release. Any application for fees and costs under the Equal Access to Justice Act must be filed in accordance with 28 U.S.C. § 2412. Petitioner's remaining requests for relief are denied.

Judgment shall be entered accordingly.

Date: November 4, 2026

DOUGLAS F. McCORMICK
United States Magistrate Judge